EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Scotiabank de Puerto Rico<br><br>Recurridos<br><br>v.<br><br>Aixa Migdalia Rosario Ramos t/c/c Aixa M. Rosario Ramos t/c/c Aixa Rosario Ramos Christian Darir Castro Rosario t/c/c Christian D. Castro Rosario t/c/c Christian Castro Rosario y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>Peticionarios | Certiorari<br><br><br>2020 TSPR 123<br><br>205 DPR _____ |

Número del Caso: CC-2016-749


Fecha: 13 de octubre de 2020


Tribunal de Apelaciones:

    Región Judicial de Aibonito, Arecibo y Utuado, Panel XII


Abogado de la parte peticionaria:

    Lcdo. Manuel López Gay


Abogados de la parte recurrida:

    Lcdo. Julio Nigaglioni Arache
        Lcda. Áurea Y. Rivera Alvarado


Materia: Ley de Mediación Compulsoria - Ley Núm. 184-2012: Requisito jurisdiccional de mediar de buena fe en la vista de mediación compulsoria en los casos de ejecución de hipoteca de una residencia principal.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Scotiabank de Puerto Rico<br><br>    Recurridos<br><br>        v.<br><br>Aixa Migdalia Rosario Ramos t/c/c Aixa M. Rosario Ramos t/c/c Aixa Rosario Ramos Christian Darir Castro Rosario t/c/c Christian D. Castro Rosario t/c/c Christian Castro Rosario y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>    Peticionarios | CC-2016-0749 | Certiorari |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 13 de octubre de 2020.

En Bco. Santander v. Correa García, 196 DPR 452 (2016), resolvimos -en el contexto del requisito jurisdiccional de la Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, 32 LPRA secs. 2881-2886 (Ley 184)- que la celebración de una vista o acto de mediación compulsorio es un requisito

jurisdiccional sin cuyo cumplimiento no se podrá dictar sentencia o celebrar la venta judicial.[1]

En esta ocasión tenemos la oportunidad de interpretar por segunda vez el requisito jurisdiccional de la Ley 184. Particularmente, en este caso es con el fin de determinar si se incumple con el requisito jurisdiccional cuando se celebra la vista o acto de mediación compulsorio y la conducta de una de las partes no es acorde con la buena fe. Así pues, debemos resolver si, en virtud de la Ley 184, constituye un requisito el que la conducta de las partes sea acorde con la buena fe y en qué consiste la definición de buena fe en este contexto. A su vez, debemos determinar si el acreedor actúa de mala fe cuando se celebra la vista o acto de mediación, pero no se proveen todas las alternativas disponibles en el mercado.

Al examinar de manera integral la Ley 184 y nuestra decisión en Bco. Santander v. Correa García, supra, por los fundamentos que más adelante esbozaremos, aclaramos que al amparo de la Ley 184 es un requisito que la conducta de las partes en el proceso de mediación sea acorde con la buena fe. Así, determinamos que cuando un acreedor hipotecario

---

[1] Es importante destacar que esto será así siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía o que, por alguna razón o sanción, sus alegaciones hayan sido suprimidas o eliminadas por el tribunal. Véase: Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184-2012, 32 LPRA sec. 2882 (Ley 184); Art.3 de la Ley Núm. 38-2019.

no provee todas las alternativas disponibles en el mercado claramente no actúa conforme a la buena fe.

En vista de lo anterior, revocamos la decisión del Tribunal de Apelaciones y ordenamos que se devuelva el caso al foro de instancia para la celebración de una vista de mediación en el caso.

**I**

El 18 de agosto de 2014, Scotiabank de Puerto Rico (Scotiabank o el banco) presentó una *Demanda* de ejecución de hipoteca por la vía ordinaria y cobro de dinero en contra de la Sra. Aixa M. Rosario Ramos y el Sr. Christian D. Castro Rosario, madre e hijo (los peticionarios). En particular, Scotiabank arguyó que éstos dejaron de pagar el préstamo hipotecario y que les había intentado cobrar lo adeudado en diversas ocasiones y por diversos medios, mas no tuvo éxito en los requerimientos de pago.[2]

Por su parte, los peticionarios contestaron la demanda y aclararon que aun cuando el señor Castro Rosario figuraba como codueño y codeudor hipotecario, la señora Rosario Ramos era quien había respondido por el pago de la hipoteca y era en realidad la dueña de la propiedad. Además, alegaron que al momento de constituirse la hipoteca en abril de 2008 se les había informado que el pago mensual sería de $568 y luego se les notificó que se añadiría el pago de dos seguros obligatorios, por lo que el pago mensual aumentó a $723; añadieron que dos años más tarde el

---

[2] *Demanda*, Apéndice de la Petición de *certiorari*, pág. 22.

pago mensual ascendió a $825.[3]   También plantearon que la señora Rosario Ramos se mantuvo pagando las mensualidades puntualmente desde el 2008 hasta junio de 2013 cuando "su situación económica empeoró a tal grado, que no pudo seguir cumpliendo con los pagos mensuales".[4]

A su vez, en la *Contestación a la demanda* se expone que la propiedad en cuestión constituye la vivienda principal de la señora Rosario Ramos y que ésta no quiere "perder su casa, su hogar, que con tanto sacrificio ha logrado adquirir".[5]  Como anejo a la contestación, se incluyó un escrito titulado "Resumen de mi Situación", en el cual la señora Rosario Ramos describe todas las gestiones que ha realizado para no perder su propiedad.[6]

---

[3] *Contestación a la Demanda*, Apéndice de la Petición de *certiorari*, pág. 25.

[4] *Contestación a la Demanda*, Apéndice de la Petición de *certiorari*, pág. 25.

[5] *Contestación a la Demanda*, Apéndice de la Petición de *certiorari*, pág. 25.

[6] En su escrito, la Sra. Aixa M. Rosario Ramos expuso que allá para el 2012 comenzó a experimentar una reducción en sus ingresos como psicóloga, ello como consecuencia de una disminución en la cantidad de personas para atender, lo que le llevó a acogerse a la quiebra al no poder cumplir con sus compromisos económicos. También señaló que para abril de 2013 confrontó problemas de salud e incluso estuvo hospitalizada.
Además, la señora Rosario Ramos manifestó que debido a que su situación económica fue empeorando ya ella había vislumbrado que no podría cumplir con el pago de la hipoteca en julio de 2013.  Ante ese panorama, retomó las llamadas a Scotiabank de Puerto Rico (Scotiabank o el banco) para notificar las razones por las cuales no había pagado. Más adelante, Scotiabank la refirió a consejería hipotecaria y acudió a un taller sobre mediación hipotecaria.  De igual forma, la señora Rosario Ramos señaló que -como parte de ese proceso- acudió a una orientación sobre morosidad hipotecaria y allí se gestionó una entrevista telefónica con el área de consejería hipotecaria.  En

Así pues, los peticionarios solicitaron al tribunal de instancia que ordenara a las partes a cumplir con la Ley 184 y ordenase al banco a "buscar alternativas a la ejecución de la hipoteca, de modo que la demandada pueda cumplir con el pago y al mismo tiempo no perder su casa".[7]

De conformidad con la Ley 184, el 13 de noviembre de 2014, el foro de instancia refirió el caso al Centro de Mediación de Conflictos. Más adelante, el 19 de marzo de 2015 la mediadora notificó al tribunal de instancia que ambas partes habían participado en la sesión obligatoria de mediación, pero que el proceso concluyó sin acuerdo.[8]

Así las cosas, el 24 de marzo de 2015, Scotiabank pidió al foro de instancia que paralizara los procedimientos por un término de 60 días debido a que las partes habían comenzado un proceso de evaluación de mitigación de pérdidas (*loss mitigation*). El tribunal de instancia concedió la solicitud y el 20 de abril de 2015 los peticionarios presentaron una *Moción solicitando desestimación*. En ésta, alegaron que los representantes de Scotiabank incumplieron con la Ley 184, con el Reglamento de Métodos Alternos para la Solución de Conflictos y con

---

particular, allí se coordinó una cita para mayo de 2014 con el Departamento de *Loss Mitigation* del banco. No obstante, luego de realizarse la pre-cualificación, Scotiabank le informó que no había cualificado debido a la falta de ingresos.

[7] *Contestación a la Demanda*, Apéndice de la Petición de *certiorari*, págs. 25-26.

[8] *Notificación al Tribunal en casos de ejecución de hipoteca*, Apéndice de la Petición de *certiorari*, pág. 67.

las instrucciones impartidas por la mediadora.[9] Particularmente, los peticionarios plantearon que el banco había incumplido con su obligación de negociar de buena fe y hacer todos los esfuerzos a su alcance para ofrecer a los deudores todas las alternativas disponibles para modificar su hipoteca.[10] Asimismo, los peticionarios acompañaron a su petición de desestimación un documento intitulado "Cronología del Proceso de Mediación Hipotecaria", en el cual exponen al detalle los pormenores ocurridos durante el proceso de mediación.[11]

Como parte de los remedios, los peticionarios solicitaron la desestimación de la demanda. A su vez, pidieron al tribunal de instancia que ordenara la celebración de una vista para que el banco mostrara causa por la cual no cumplió con la Ley 184 y que ordenara a las partes a someterse nuevamente al proceso de mediación compulsoria, pero "en este caso ordenando al [b]anco a negociar de buena fe, no entorpecer la [m]ediación, ceñirse a las reglas, y ofrecer todas las alternativas viables a la deudora".[12] Sin embargo, la petición de desestimación quedó

---

[9] *Moción solicitando desestimación,* Apéndice de la Petición de *certiorari*, pág. 32.

[10] *Moción solicitando desestimación,* Apéndice de la Petición de *certiorari*, pág. 33.

[11] *Moción solicitando desestimación,* Apéndice de la Petición de *certiorari*, págs. 36-42.

[12] *Moción solicitando desestimación,* Apéndice de la Petición de *certiorari*, pág. 34.

pendiente hasta que finalizara el proceso en el Departamento de *Loss Mitigation* de Scotiabank.

Posteriormente, el 2 de julio de 2015, Scotiabank presentó una *Moción de continuación de los procedimientos y solicitud de sentencia sumaria*. En síntesis, alegó que los peticionarios habían rechazado la oferta o alternativa provista por el banco, por lo que solicitó al foro de instancia la continuación de los procedimientos y que declarara "no ha lugar" la moción de desestimación. Asimismo, Scotiabank solicitó que se dictara sentencia sumaria debido a la ausencia de hechos en controversia. Ante esto, los peticionarios contestaron la petición de sentencia sumaria y reiteraron que el banco no había cumplido con el proceso de mediación. Así pues, solicitaron que el tribunal de instancia declarara "no ha lugar" la solicitud de sentencia sumaria de Scotiabank.

En su réplica de 23 de julio de 2015, Scotiabank reiteró que tanto en el proceso de mediación como en el proceso de mitigación de pérdidas habían ofrecido a los peticionarios las alternativas disponibles de acuerdo con su situación particular, pero éstos las rechazaron.

En vista de ello, el 24 de julio de 2015 el foro de instancia emitió una Resolución mediante la cual declaró "no ha lugar" la moción de desestimación presentada por los peticionarios.[13] En particular, expuso que en dicha moción

---

[13] Una copia de la notificación de la Resolución se archivó en los autos el 4 de agosto de 2015.

se habían incluido materias ajenas a las alegaciones de la demanda, así como documentos que no cumplían con la Regla 36 de Procedimiento Civil.[14]  A su vez, el tribunal de instancia expresó que el alegado incumplimiento con el proceso de mediación por parte de Scotiabank no constituía un fundamento para desestimar la demanda.  Por último, concedió 10 días al banco para que <u>expusiera su posición en cuanto al reclamo de los peticionarios relativo a que Scotiabank no cumplió con "la obligación de participar de buena fe en el proceso de mediación".</u>[15]

Más adelante, mediante una Resolución de 4 de agosto de 2015, el foro de instancia dio por cumplida la orden en cuanto al proceso de mediación y, a su vez, concedió 30 días a los peticionarios para que se expresaran sobre la moción de sentencia sumaria del banco.

Inconformes con la decisión del foro de instancia, en septiembre de 2015 los peticionarios presentaron un recurso de *certiorari* ante el Tribunal de Apelaciones y en octubre de ese mismo año Scotiabank presentó su Alegato.

Así las cosas, el 24 de mayo de 2016, el Tribunal de Apelaciones modificó el dictamen del foro de instancia únicamente a los fines de que debió cumplirse con la Regla

---

[14] 32 LPRA Ap. V.

[15] *Resolución*, Apéndice de la Petición de *certiorari*, pág. 47.

36 de Procedimiento Civil sobre sentencia sumaria.[16]  Así modificada, el foro apelativo intermedio confirmó la decisión en cuanto a que el banco actuó de buena fe, por lo que se cumplió con el proceso de mediación de carácter jurisdiccional de la Ley 184.  Ante esto, el Tribunal de Apelaciones ordenó la continuación de los procedimientos ante el tribunal de instancia.  Por su parte, la Jueza Grana Martínez emitió una Opinión disidente en la que expuso lo siguiente:

> La Ley 184-2012 reconoce que el desconocimiento de los ciudadanos sobre los tecnicismos y los procesos complejos de todas las obligaciones legales incurridas en un préstamo hipotecario, requiere de mayor orientación.  Ciertamente a la hora de incurrir en una obligación hipotecaria poco, si alguna, es la orientación que se brinda sobre los efectos de la ejecución de hipoteca en caso de impago.  Inclusive tampoco se orienta sobre los efectos que puede tener una ejecución, en los demás bienes del deudor en caso de que la cantidad obtenida producto de la ejecución no cubra la totalidad de la deuda.  No obstante, esa deficiencia en el proceso corresponde ser evaluada y subsanada por el poder legislativo, si así lo entiende pertinente.
>
> . . . . . . . .
>
> El expediente ante nuestra consideración contiene alegaciones de ambas partes.  Sin embargo, está huérfano de evidencia que demuestre que se ofrecieron alternativas tales como el Home Affordable Program Act, en adelante HAMP, o Home Affordable Refinance Program, en adelante HARP.  Estos programas ofrecen refinanciamiento a intereses más bajos a aquellos dueños de viviendas con préstamos garantizados por *Fannie Mae* o *Freddie Mac*, incluyendo aquéllos que deben hasta un poco más del valor real de su vivienda.
>
> No surge del expediente información que justifique o sustente que la alternativa que reduce los .96 centavos en el pago mensual es la única alternativa viable.  Ciertamente puede que en circunstancias específicas así sea.  Lo que nos intranquiliza es que a ciencia cierta no sabremos si

---

[16] Una copia de la notificación de la Sentencia se archivó en autos el 27 de mayo de 2016.

la peticionaria obtuvo la ayuda disponible en el mercado y establecida por ley para salvar su único hogar, puesto que no surgen explicaciones en el expediente.

. . . . . . . .

En este caso en particular, no puedo suscribir la opinión mayoritaria, pues según surge del expediente, siento que el banco brindó poca información, insuficiente para concluir que negoció de buena fe para ayudar a la peticionaria a salvar su hogar. (Énfasis suplido).[17]

Inconformes con la decisión del foro apelativo intermedio, el 8 de agosto de 2016 los peticionarios presentaron ante esta Curia una Petición de *certiorari* en la cual esbozaron este señalamiento de error:

La parte peticionaria considera que el Honorable Tribunal de Apelaciones erró al expedir el recurso únicamente a los fines de cumplir con la Regla 36 de Procedimiento Civil y confirmar el resto del dictamen. La parte peticionaria entiende que el Honorable Tribunal también debió expedir el recurso en cuanto al resto del dictamen y es de esa parte de la Sentencia, declarando [c]on [l]ugar la [d]esestimación que la parte peticionaria solicita revisión a este Honorable Tribunal Supremo.

Expedimos el recurso y el caso quedó sometido en los méritos. Pasemos a examinar el derecho aplicable a la controversia ante nuestra consideración.

## II

A. La Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal, Ley Núm. 184-2012

En la Exposición de Motivos de la Ley 184, aprobada el 17 de agosto de 2012, el Legislador manifiesta que el propósito del estatuto es proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis

---

[17] Véase Opinión disidente de la Jueza Grana Martínez, Apéndice de la Petición de *certiorari*, págs. 147-148.

económica.[18]    En particular, la Exposición de Motivos

expresa lo siguiente:

> […]
>
> La crisis económica en Puerto Rico ha afectado grandemente a nuestra ciudadanía, quienes se han visto privados de su derecho propietario de poder tener su residencia propia.
>
> Los préstamos hipotecarios contienen en su mayoría cláusulas de aceleración y otros procesos para asegurar la acreencia por parte del acreedor hipotecario.
>
> La ciudadanía en general desconoce los tecnicismos y los procesos complejos de todas las obligaciones legales incurridas en un préstamo hipotecario, requiere de mayor orientación sobre dichos procesos.
>
> Considerando todo lo anterior, la Administración del Presidente Barack Obama creó el programa "The Making Home Affordable Program (MHP)" para ayudar a aquellos deudores hipotecarios a poder refinanciar o modificar sus préstamos mediante dos programas:
>
>> A) "Home Affordable Refinance Program (HARP)":
>> Ofrece refinanciamiento a intereses más bajos a aquellos dueños de viviendas con préstamos garantizados por Fannie Mae o Freddie Mac, incluyendo aquéllos que deben hasta un poco más del valor real de su vivienda.
>>
>> B) "Home Affordable Modification Program (HAMP)":
>> Ofrece a aquellos deudores hipotecarios el proveerle incentivos al modificar sus préstamos, reduciendo el interés del préstamo, extendiendo el tiempo del mismo o reduciendo los pagos de la hipoteca de la propiedad hasta un 35% del ingreso bruto.
>
> .    .    .    .    .    .    .    .
>
> El Gobierno Estatal, al igual que el Gobierno Federal, debe colaborar y buscar alternativas que logren disminuir los procesos de ejecución de hipotecas y evitar al máximo posible que nuestros

---

[18] Véanse Exposición de Motivos de la Ley 184, *supra*; Bco. Santander de Puerto Rico v. Correa García, 196 DPR 452 (2016).

ciudadanos sigan perdiendo sus propiedades. La realidad es que estas alternativas existen y el público las desconoce.

.    .    .    .    .    .    .    .

A tenor con lo antes indicado, es imprescindible que la Asamblea Legislativa de Puerto Rico cree una Ley con el propósito de crear un proceso de mediación compulsoria ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, previo a llevar un proceso de ejecución de hipoteca (foreclousure) de cualquier propiedad principal de vivienda en Puerto Rico por cualquier entidad bancaria. Entiéndase propiedad principal de vivienda como aquella que se usa como hogar principal, no (second home), y que para fines de contribuciones sobre bienes inmuebles es la primera residencia o aquella que gozaría de aplicar en cada caso de una exención contributiva. (Énfasis suplido).

De conformidad con el referido propósito legislativo, el Art. 2(b) de la Ley 184, 32 LPRA sec. 2881, incluye varias definiciones. Entre éstas, el inciso (b) establece la definición del concepto "mediación compulsoria" en estos términos:

(b) Mediación Compulsoria: En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación conducida en una sala o salón del Tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores, y presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal. (Énfasis suplido).

Asimismo, el Art. 3 de la Ley 184, 32 LPRA sec. 2882, establece que el tribunal deberá ordenar la celebración de una vista de mediación compulsoria y ello constituye un requisito jurisdiccional.  En lo pertinente, el mencionado artículo dispone lo siguiente:

> Será deber del tribunal, en los casos que considere necesarios, dentro de los sesenta (60) días después de presentada la alegación responsiva por parte del deudor hipotecario demandado  y antes de que se señale la conferencia con antelación al juicio, bajo apercibimiento de desacato, una vista o acto de mediación compulsorio que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. Esto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita. (Énfasis suplido).

Al considerar el mencionado Art. 3, en Bco. Santander v. Correa García, supra, pág. 472, expresamos que "[n]uestra interpretación es cónsona con el espíritu de la ley y la intención legislativa de otorgar a los deudores la oportunidad de conocer los remedios que pueden tener disponibles para evitar la pérdida de su hogar". Así pues, con la vista de mediación el deudor podrá obtener información sobre los remedios que tiene disponibles para evitar la pérdida de su residencia principal y, a su vez,

tendrá la oportunidad de sentarse a negociar con su acreedor.[19] Asimismo, añadimos que el requisito jurisdiccional que impone la Ley 184 se refiere a que ocurra un señalamiento o citación para una vista de mediación, pero la extensión de dicho procedimiento y su resultado dependerán de la conducta de las partes. (Énfasis suplido).[20]

B. La Ley Núm. 38-2019

Con el propósito de enmendar el Art. 3 de la Ley 184, se aprobó la Ley Núm. 38-2019 (Ley 38). En particular, la Exposición de Motivos de la Ley 38 hace referencia a que el proceso de mediación entre una persona particular y una institución financiera propugna "ayuda[r] a las personas en el conflicto a lograr un acuerdo aceptable para ambos".[21] Más adelante, se menciona que en la reunión de mediación entre las partes corresponderá al acreedor hipotecario notificar al deudor hipotecario "todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de su vivienda principal".[22] Luego de detallar algunas de esas alternativas, el Legislador especificó que el propósito de esta reunión de mediación es "evaluar la posibilidad de llegar a un acuerdo

---

[19] Bco. Santander v. Correa García, 196 DPR 452, 461 (2016).

[20] Íd., pág. 473.

[21] Exposición de Motivos de la Ley Núm. 38-2019 (Ley 38).

[22] Íd.

satisfactorio [para] ambas partes".[23]

La Asamblea Legislativa dispuso que la Ley 38 tendría una vigencia inmediata luego de su aprobación.[24] En lo pertinente, el Art. 3 de la Ley 184 actualmente lee de la manera siguiente:

> Será deber del Tribunal, al presentarse la demanda y diligenciarse el emplazamiento, citar a las partes a una vista o acto de mediación compulsoria que presidirá un mediador seleccionado por las partes y que tendrá lugar en cualquier salón o sala del tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, en la cual se le informará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la privación del inmueble al deudor, ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal, incluyendo aquellas alternativas que no dependen de la capacidad económica del deudor, como lo son la venta corta ("*short sale*"), la dación en pago, entrega voluntaria de título, y otros remedios que eviten que el deudor pierda su hogar o que, de perderlo, se minimicen las consecuencias negativas sobre el deudor.
>
> […] Lo aquí dispuesto será un requisito jurisdiccional en los procesos a llevarse a cabo ante los Tribunales de Puerto Rico que envuelvan un proceso para la ejecución de una hipoteca garantizada con una propiedad residencial que constituya una vivienda personal del deudor o de los deudores sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita.
>
> […] De no presentarse el acreedor hipotecario, al procedimiento de mediación, en cualquiera de sus etapas, sin que medie justificación adecuada, o de no actuar de buena fe en cuanto al ofrecimiento de alternativas disponibles, impidiendo que se alcance un acuerdo viable con el deudor, el Tribunal procederá a desestimar la demanda presentada. El deudor tendrá derecho únicamente a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad

---

[23] Exposición de Motivos de la Ley 38.

[24] Nótese que la Ley 38 no es de carácter retroactivo, por lo que este caso claramente se resuelve al amparo de la Ley 184 de 2012. En consecuencia, no son de aplicación las enmiendas integradas en el 2019 debido a que la *Demanda* del caso ante nuestra consideración fue presentada en el 2014.

residencial que constituya su vivienda principal, siempre y cuando el deudor hipotecario demandado no se encuentre en rebeldía, o que por alguna razón o sanción sus alegaciones hayan sido suprimidas o eliminadas por el tribunal.   (Énfasis suplido).[25]

C. El requisito de la buena fe en el proceso de mediación

Como señalamos en Bco. Santander v. Correa García, supra, el propósito de la Ley 184 es que el acreedor y el deudor lleguen a un acuerdo que evite la ejecución y la venta en pública subasta de la vivienda principal del deudor.   En otras palabras, el fin principal de la mediación es evitar un pleito.   Así pues, el Art. 2(a) de la Ley 184 define mediación como "[u]n proceso de intervención, no adjudicativo, en el cual un interventor o una interventora neutral (mediador o mediadora) ayuda o asiste a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable para resolver su controversia".   (Énfasis suplido).   Este acuerdo, como algunos han señalado, "no sería otra cosa que un contrato de transacción".[26]

---

[25] Exposición de Motivos de la Ley 38.

[26] Véase L.R. Marín Aponte y otros, Al rescate de los deudores hipotecarios, 86 Rev. Jur. UPR 71, 94 (2017).   En particular, el Art. 1709 del Código Civil de Puerto Rico, 31 LPRA sec. 4821, define la transacción como "un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado".

De acuerdo con nuestra jurisprudencia, el contrato de transacción, por su naturaleza, debe interpretarse de manera restrictiva.   Véanse: Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 514 (1988); Negrón Rivera y Bonilla, Ex parte, 120 DPR 61, 74-75 (1987).   Ahora bien, "[e]n lo que no sean incompatibles con las normas que regulan los contratos de transacción, son de aplicación las reglas generales sobre la interpretación de los contratos".   Refiérase a Citibank v. Dependable Ins. Co., Inc., supra, págs. 514-515; Negrón Rivera y

Por su parte, la Regla 7.01(a) del Reglamento de Métodos Alternos para la Solución de Conflictos, según enmendado, 4 LPRA Ap. XXIX, dispone que la mediación "permite a las partes, con la intervención de un facilitador o una facilitadora imparcial denominado(a) mediador(a), <u>explorar todas las opciones posibles para lograr un acuerdo que les sea mutuamente aceptable y que finalice el conflicto</u>". (Énfasis suplido).

A manera comparativa, en Estados Unidos son varios los estados que han adoptado legislación sobre programas de mediación en procesos de ejecuciones de hipoteca de una vivienda principal.[27] En particular, más de una veintena de estados tienen tales programas de mediación, entre ellos Connecticut, Maine, Nevada, New York y Vermont. De conformidad con lo anterior, hemos identificado varias

---

<u>Bonilla, Ex parte</u>, supra. Como menciona el tratadista Luis Díez-Picazo, los contratos deben interpretarse conforme a la buena fe, que es un estándar de conducta según los imperativos éticos exigibles de acuerdo con la conciencia social imperante. Luis Díez-Picazo, <u>Fundamentos de Derecho Civil Patrimonial</u>, Madrid, Ed. Tecnos, 1979, Vol. I, pág. 251. Véase, además, <u>Citibank v. Dependable Ins. Co., Inc.</u>, supra, pág. 515.

[27] Para referencia, véanse: National Consumer Law Center, <u>Foreclosure Mediation Programs by State</u>, https://www.nclc.org/issues/foreclosure-mediation-programs-by-state.html (última visita, 25 de septiembre de 2019); National Consumer Law Center, <u>State and Local Foreclosure Mediation: Can They Save Homes?</u>, en: https://www.nclc.org/images/pdf/foreclosure_mortgage/mediation/report-state-mediation-programs.pdf (última visita, 25 de septiembre de 2019); Department of Justice & Department of Housing and Urban Development, <u>Emerging Strategies for Effective Foreclosure Mediation</u>, en:https://www.justice.gov/sites/default/files/atj/legacy/2010/11/18/effective-mediation-prog-strategies.pdf (última visita, 25 de septiembre de 2019).

jurisdicciones estatales que tienen programas de mediación compulsoria y han adoptado el requisito de buena fe, esto debido a que muchos de los programas de mediación en tales jurisdicciones han enfrentado problemas para crear un sistema con una participación significativa y que se provean oportunidades reales a los participantes.[28]  En vista de ello, consideramos pertinente repasar el requisito de buena fe en algunas de esas jurisdicciones estatales.

En Nevada, el programa de mediación compulsoria requiere que el acreedor provea la información que utilizó para determinar la elegibilidad o no del deudor para una modificación de préstamo y si no lo hace entonces enfrentará la imposición de sanciones.[29]  Además, requiere que las partes actúen con buena fe.  En Levya v. National Default Servicing Corp., 255 P.3d 1275 (Nev. 2011), el Tribunal Supremo de Nevada determinó que el estatuto sobre el programa de mediación requiere de las partes un

---

[28] H. Costigan-Cowles, Negotiations for the Home: A Balanced Approach to Good Faith in Foreclosure Mediation, 2013 U. Ill. L. Rev. 1571, 1572 (2013).

[29] Íd., pág. 1595.  Es importante destacar que si bien es cierto que a veces los acreedores no proveen una modificación real debido a que el deudor no es un candidato adecuado para ello, en la gran mayoría de los casos el deudor no sabe por qué no cualifica para la modificación del préstamo. Véase Costigan-Cowles, supra, pág. 1596. Ante esto, algunas jurisdicciones estatales han implantado un programa de housing counselors mediante el cual se orienta al deudor a base de su estado financiero, ello antes de la vista o acto de mediación.  Íd., pág. 1599.

cumplimiento estricto dado a que la intención de la Legislatura al utilizar la expresión "shall" (deberá) en la ley fue a los fines de que el cumplimiento con las normas del programa fuese obligatorio.[30] De esta manera, el requisito de buena fe es consistente con el requisito jurisdiccional y de obligatoriedad, ya que establece claramente las normas que deberán cumplir los acreedores para evitar sanciones.[31] De igual manera, en Maine se requiere que las partes realicen un esfuerzo de buena fe en el proceso de mediación y ante el incumplimiento con el requisito de conducirse de buena fe entonces el tribunal podrá imponer las sanciones correspondientes.[32]

Por su parte, en Illinois si las partes no actúan de buena fe en el proceso de mediación, el tribunal podrá imponer sanciones. Éstas incluyen, pero no se limitan a la desestimación de la demanda, honorarios de abogados y sanciones económicas. Además, con particular pertinencia a la controversia ante esta Curia, si las partes no llegan a un acuerdo entonces el mediador deberá notificar a la corte

---

[30] Costigan-Cowles, *supra*, pág. 1596.

[31] Íd.

[32] Me. Rev. Stat. Ann. tit. 14, sec. 6321-A (2014). Para referencia, véase J.D. Stewart, Maine´s Foreclosure Mediation Program: What Should Constitute a Good Faith Effort to Mediate?, 64 Me. L. Rev. 249, 281 (2011).

si alguna de las partes no actuó de buena fe.[33]  Mientras, en Washington se violenta el requisito de buena fe, como por ejemplo, en circunstancias como éstas: cuando las partes fallan en llevar la documentación necesaria a la vista de mediación, el acreedor no designa a una persona autorizada a modificar el pago o cuando el acreedor solicita que el deudor renuncie a futuras reclamaciones como condición a la modificación.[34]

En el caso de New York, las partes están obligadas a actuar de buena fe en el proceso de mediación.[35]  Aunque la ley no define lo que es buena fe, su propósito es "evitar que el deudor pierda su hogar" por medio de un "acuerdo entre las partes".[36]  Entre las alternativas que el acreedor debe proveer al deudor se incluye, pero no se limita a, la modificación del pago, *short sale* y *loss mitigation*.  En este mismo estado, los tribunales han razonado que la falta de participación real en el proceso de mediación puede ser remediado con la imposición de sanciones a esos acreedores que incumplen con el requisito de buena fe.[37]  Algunas de

---

[33] Ill. Comp. Stat. Ann. R. 19 CIR 7-12.18 (West 2016).

[34] Wash. Rev. Code Ann. sec. 61.24.163 (West 2014).

[35] N.Y. C.P.L.R. 3408 (McKinney 2009). Véase, además, Costigan-Cowles, *supra*, págs. 1597-1598.

[36] Costigan-Cowles, *supra*, pág. 1598.

[37] Costigan-Cowles, *supra*, págs. 1598-1599.

esas sanciones han sido: el requerimiento de documentos, las penalidades civiles que no excedan de los $25,000 y el otorgamiento de compensación por daños a las partes. Cabe mencionar que bajo el requisito de buena fe incluido en la legislación de New York, los tribunales pueden retirar la sanción si el acreedor corrige la violación, ya que el propósito del estatuto es incentivar que los acreedores modifiquen su conducta.[38]

Distinto a las jurisdicciones mencionadas, la Ley 184 no incluyó originalmente una disposición expresa que facultara al tribunal a imponer sanciones específicas cuando el acreedor no obra de buena fe en el proceso de mediación compulsoria. Aunque la Asamblea Legislativa corrigió posteriormente esa laguna al imponer como única sanción la desestimación de la demanda, lo cierto es que las enmiendas de la Ley 38 no son de carácter retroactivo. Lo anterior significa que la desestimación como sanción no está disponible para aquellos procesos que se instaron al amparo de la Ley 184 antes de que entraran en vigor las enmiendas de la Ley 38 en el 2019. Sin embargo, tratándose la mediación compulsoria de un procedimiento que se celebra mientras el tribunal retiene su jurisdicción, nada impide que en esos casos el juez del foro primario, en su sana

---

[38] Íd., pág. 1600.

discreción, imponga otras sanciones a tenor de la Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, por conducta constitutiva de demora u obstrucción en perjuicio de la eficiente administración de la justicia.

**III**

En particular, los peticionarios sostienen que Scotiabank no cumplió con el requisito jurisdiccional de actuar conforme a la buena fe durante el proceso de mediación compulsoria, esto debido a que no les presentó todas las alterativas disponibles en el mercado para que así no perdieran su vivienda principal. Concluimos que tienen razón.

En el caso ante nuestra consideración, el foro apelativo intermedio razonó que Scotiabank actuó de buena fe y, por lo tanto, cumplió con el proceso de mediación de carácter jurisdiccional. Como explicamos, el requisito jurisdiccional ocurre cuando se da un señalamiento o vista de mediación compulsoria. Particularmente, en el caso de epígrafe la vista de mediación ocurrió, pero Scotiabank no actuó de buena fe.

Según mencionáramos, al igual que en Puerto Rico, el requisito de buena fe en el proceso de mediación se ha implantado en varias jurisdicciones estatales. De igual forma, el Art. 2 de la Ley 184 establece que el acreedor debe proveer "[t]odas las alternativas disponibles en el

mercado durante la vista o acto de mediación". Según hemos reiterado, este requisito es cónsono con la definición de buena fe que proveen las jurisdicciones estatales antes mencionadas. En lo que atañe al acreedor hipotecario, el Art. 3 de la Ley 38 expresamente impone un deber de actuar de buena fe en cuanto al ofrecimiento de todas las alternativas disponibles en el mercado.[39] Por lo tanto, concluimos que el requisito de buena fe es consistente con el requisito jurisdiccional y compulsorio de la Ley 184.[40]

A raíz de lo antes mencionado y de conformidad con el propósito de la Ley 184, el requisito de buena fe en la mediación en los procesos de ejecuciones de hipoteca de una vivienda principal debe ser definido en armonía con el requisito compulsorio y jurisdiccional. En primer lugar, las partes deben ir preparadas para negociar y llegar a un acuerdo, de ser posible.[41] En segundo lugar, las partes deben llevar a la vista o al acto de mediación toda la documentación que requiere el proceso de mediación y

---

[39] A pesar de que las enmiendas establecidas en la Ley 38 no son de carácter retroactivo, enfatizamos en que "el requisito de la buena fe es también exigencia general de nuestro derecho y que como tal se extiende a la totalidad de nuestro ordenamiento jurídico". Es decir, "el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica". Velilla v. Pueblo Supermarkets, Inc., 111 DPR 585, 587-588 (1981).

[40] Así, pautamos la norma jurídica para todos aquellos casos a los que no le aplican las enmiendas promulgadas en la Ley 38.

[41] Según mencionado anteriormente, en varios estados se han implantado programas de *housing counselors*. Véase A. Bartold, *Michigan's Legislative Response to the Current Mortgage Crisis: The "Foreclosure Lifeline" Program,* 12 J. L. Society 157, 163-166 (2011).

cualquier otra documentación necesaria. En tercer lugar, el representante del acreedor hipotecario debe tener autoridad para llegar a un acuerdo.[42] Finalmente, los acreedores deben proveer a los deudores todas las alternativas disponibles en el mercado, tales como la modificación del préstamo, un análisis en virtud de los programas federales *Home Affordable Modification Program* (HAMP) y *Home Affordable Refinance Program* (HARP), entre otras. Lo anterior, incluye aquellas alternativas que no dependen de la capacidad económica de deudor, como lo son la venta corta (*short sale)*, dación en pago, entrega voluntaria de título, entre otras.[43]

De conformidad con lo anterior, en el presente caso, concluimos que Scotiabank no demostró haber orientado a los peticionarios adecuadamente. Además, el banco tampoco puso al tribunal de instancia en posición de determinar que ofreció a los peticionarios todas las alternativas disponibles en el mercado. Por lo tanto, de ninguna manera podemos determinar que Scotiabank actuó de buena fe en el proceso de mediación con los peticionarios. Del expediente

---

[42] Debido a los costos adicionales que podría tener este requisito, muchos de los programas estatales permiten que el representante con autoridad se comunique por teléfono.

[43] Adviértase que las alternativas que el acreedor está obligado a brindarle al deudor son aquellas para las que el deudor cualifique, incluyendo las que no dependan de la capacidad económica de este. También, dependerán del tipo de préstamo y de la reglamentación federal aplicable.

no surge que Scotiabank haya realizado un esfuerzo real de llegar a un acuerdo con los peticionarios para evitar la pérdida de su vivienda principal.

Reiteramos que el incumplimiento con lo anterior constituye un impedimento jurisdiccional que priva al tribunal de continuar con los procedimientos ante ese foro. En consecuencia, resolvemos que en aquellos casos en los que el acreedor incumple con el requisito de buena fe en la mediación y la sanción de la desestimación no está disponible, el tribunal deberá ordenar la celebración de una nueva mediación conforme a lo aquí dispuesto. Lo anterior sin limitar la discreción del tribunal de imponer sanciones al amparo de la Regla 44.2 de Procedimiento Civil u otra penalidad que en derecho proceda.

Aclaramos que esta decisión no implica que el acreedor -en aras de cumplir con el proceso de mediación- tenga que llegar a un acuerdo con el deudor. Sin embargo, el acreedor debe notificarle al deudor todas las alternativas disponibles en el mercado en ánimo de hacer un esfuerzo real para evitar la ejecución de la vivienda principal del deudor. En conclusión, de esta manera la Ley 184, la cual responde al interés del Estado de evitar que miles de ciudadanos sigan perdiendo sus casas en Puerto Rico, puede cumplir con su propósito apremiante.[44]

---

[44] Véase Exposición de Motivos de la Ley 184.

**IV**

Por los fundamentos expuestos, revocamos la sentencia dictada por el Tribunal de Apelaciones y ordenamos la devolución del caso al Tribunal de Primera Instancia para que proceda con la celebración de una vista de mediación en el caso.

Se dictará sentencia de conformidad.


                                    Erick V. Kolthoff Caraballo
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Scotiabank de Puerto Rico<br><br>    Recurridos<br><br>        v.<br><br>Aixa Migdalia Rosario Ramos t/c/c Aixa M. Rosario Ramos t/c/c Aixa Rosario Ramos Christian Darir Castro Rosario t/c/c Christian D. Castro Rosario t/c/c Christian Castro Rosario y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>    Peticionarios | CC-2016-0749 | Certiorari |
|---|---|---|

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de octubre de 2020.

Por los fundamentos expuestos, revocamos la sentencia dictada por el Tribunal de Apelaciones y ordenamos la devolución del caso al Tribunal de Primera Instancia para que proceda con la celebración de una vista de mediación en el caso.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Colón Pérez concurren sin opinión ni expresión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo